In re HAYNES AND BOONE, LLP and Patrick L. Hughes, Relators.

No. 01–12–00341–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 26, 2012.

David Beck, Douglas Pritchett Jr., Michael E. Richardson, Alex Benjamin Roberts, Beck Redden & Secrest, Craig Smyser, Smyser, Kaplan & Veselka L.L.P., Houston, TX, for Relators.

Vincent L. Marable, III, Paul Webb, P.C., Wharton, TX, Williams F. Hagans, Hagans, Burdine, Montgomery & Rustay, P.C., Joseph D. Jamail, Jamail & Kolius, Houston, TX, for Real Party in Interest.

Panel consists of Justices MASSENGALE, BROWN, and HUDDLE.

## OPINION

MICHAEL MASSENGALE, Justice.

This original proceeding concerns a legal malpractice claim relating to the handling of an antitrust matter.[1] The relators,

---

1. At the time relators filed their mandamus petition, the underlying case was styled *Rx. com, Inc. and Joe S. Rosson v. John M. O'Quinn & Associates, PLLC d/b/a The O'Quinn Law Firm, John M. O'Quinn & Associates, L.L.P., Laminack, Pirtle & Martines,* *L.L.P., Richard M. Laminack, Thomas W. Pirtle, Haynes & Boone, L.L.P., and Patrick Hughes,* No. 2010–66863, in the 80th Judicial District of Harris County, Texas. The respondent is the Honorable Larry Weiman.

Haynes and Boone, LLP and Patrick L. Hughes, are defendants in the malpractice suit. The real parties in interest, Rx.com, Inc. and its founder Joe S. Rosson, filed the suit alleging that the relators (and others) harmed them by failing to timely file an antitrust suit within the limitations period.

The relators contend that the suit presents embedded federal issues in the form of Sherman Act claims which must be proved to prevail on the malpractice cause of action and thus constitute a "case within the case." These federal issues are the basis for relators' invocation of exclusive federal subject-matter jurisdiction over the malpractice claim. They thus argue that Texas state courts lack subject-matter jurisdiction to entertain such claims. These arguments were presented in a plea to the jurisdiction, which the trial court denied. The relators then filed a petition for writ of mandamus to seek review of that ruling.

We conclude that the trial court correctly denied the plea and that Texas courts may exercise jurisdiction over legal malpractice claims related to antitrust matters. Accordingly, we deny the petition.

## Background

Prior to the filing of the malpractice suit at issue in this original proceeding, Rx.com filed an antitrust complaint in federal district court against various pharmacy benefit manager defendants. In addition to state-law claims that were later abandoned, the complaint included three causes of action under the Sherman Act: agreement in restraint of trade in violation of Section 1; conspiracy to monopolize in violation of Section 2; and attempted monopolization in violation of Section 2. *See* 15 U.S.C. §§ 1, 2. The antitrust suit was dismissed on limitations grounds, and the Fifth Circuit Court of Appeals affirmed that judgment on appeal. *See Rx.com v.*

*Medco Health Solutions, Inc.,* 322 Fed. Appx. 394 (5th Cir.2009).

The real parties in interest sued Rx.com's former lawyers, including the relators, for legal malpractice in connection with the failure to timely file the antitrust suit. The petition was originally filed in a Texas state district court. The defendants removed the case to federal court, arguing that federal-question jurisdiction applied to the legal malpractice claims because of embedded federal questions relating to the original antitrust claims. *See RX.com, Inc. v. O'Quinn,* 766 F.Supp.2d 790, 793 (S.D.Tex.2011). The federal district court analyzed the question of whether the legal malpractice claims were ones "arising under" federal law, 28 U.S.C. § 1331, applying the standard articulated by the United States Supreme Court in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,* 545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005), and considering whether the malpractice claims "necessarily raise a stated federal issue [that is] actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *RX.com,* 766 F.Supp.2d at 794 (quoting *Grable,* 545 U.S. at 314, 125 S.Ct. at 2368). Relying in significant measure upon the Fifth Circuit's application of the *Grable* standard to a legal malpractice claim in *Singh v. Duane Morris LLP,* 538 F.3d 334 (5th Cir.2008), the federal court concluded that two of the necessary elements—a substantial federal interest and a lack of disruption to the balance of federal and state judicial responsibilities—were not present. Accordingly, the federal district court found that federal-question jurisdiction did not exist, and the case was remanded to state court. *See RX.com,* 766 F.Supp.2d at 797.

Following the remand to state court, two new opinions were issued in other cases, which the relators contend provided supervening authority to support their contention that the case belongs in federal court. In *USPPS, Ltd. v. Avery Dennison Corp.*—a case in which federal subject-matter jurisdiction was apparently undisputed due to the diversity of the parties— the Fifth Circuit applied the *Grable* test to determine that a state-law legal malpractice claim arose under federal patent law so as to invoke the exclusive appellate jurisdiction of the Federal Circuit.[2] Accordingly, the *USPPS* appeal was transferred to the Federal Circuit.[3]

Then the Supreme Court of Texas held, in *Minton v. Gunn,* that the federal courts have exclusive subject-matter jurisdiction over a malpractice claim arising out of legal representation in a patent infringement action. *See* 355 S.W.3d 634, 646 (Tex.2011), *petition for cert. filed,* No. 11–

1118 (U.S. Mar. 9, 2012). The *Minton* case originated in state court and was dismissed on a motion for summary judgment. *See id.* at 638. However, in addition to granting federal jurisdiction over cases arising under federal patent law, 28 U.S.C. § 1338(a) also specifically prohibits state courts from exercising jurisdiction over the same category of cases.[4] The claimant thus raised a subject-matter jurisdiction objection on appeal, and that argument was ultimately vindicated by the Supreme Court, which concluded, "based upon the specific facts of this case," [5] that the embedded federal question "triggered exclusive federal patent jurisdiction," requiring dismissal of the case without considering its merits. *Minton,* 355 S.W.3d at 646–47.

Relying primarily on *USPPS* and *Minton,* the relators re-urged their arguments in the trial court by filing a plea to the jurisdiction. As part of the argument pre-

---

**2.** *See USPPS, Ltd. v. Avery Dennison Corp.,* 647 F.3d 274, 277–82 (5th Cir.2011); 28 U.S.C. § 1295(a)(1) ("The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction . . . of an appeal from a final decision of a district court of the United States . . . in any civil action arising under . . . any Act of Congress relating to patents. . . .").

**3.** *See USPPS,* 647 F.3d at 284. Notably, two judges of the Federal Circuit subsequently concurred in the judgment affirming the trial court in *USPPS* while noting their disagreement with their court's precedents applying *Grable,* which they characterized as turning what "would otherwise be a 'clearly wrong' transfer decision into one that is 'plausible,' " thus requiring their court "to accept the transfer and resolve the merits of the appeal." *Id.* at 1350 (O'Malley, J., concurring) (quoting *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817–19, 108 S.Ct. 2166, 2178– 79, 100 L.Ed.2d 811 (1988)).

**4.** *See* 28 U.S.C. § 1338(a) ("No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating

to patents. . . ."). This statute, expressly depriving state courts of jurisdiction over claims arising under federal patent law, was amended in 2011. *See* Act of Sept. 16, 2011, § 19(a), 125 Stat. 331. The prior version of the statute provided: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents. . . . Such jurisdiction shall be exclusive of the courts of the states in patent . . . cases." Act of June 25, 1948, ch. 646, 62 Stat. 931.

**5.** The Supreme Court specifically disavowed a broad interpretation of its holding such that "all legal malpractice suits arising out of patent litigation" might be considered "to fall under the exclusive patent law jurisdiction of the federal courts." *Minton v. Gunn,* 355 S.W.3d 634, 646 (Tex.2011), *petition for cert. filed,* No. 11–1118 (U.S. Mar. 9, 2012). The Court indicated that "any state litigant asserting a legal malpractice action to recover for damages resulting from his patent attorney's negligence in patent prosecution or litigation must also satisfy all four elements of the *Grable* test to place his claim under exclusive federal jurisdiction." *Id.*

sented to the trial court, the relators contended that "determining whether Rx.com would have prevailed will entail litigation of the full panoply of factual and legal issues attending to a Sherman Act claim." The trial court denied the plea,[6] and the relators filed their mandamus petition, seeking relief from the trial court's continuing exercise of subject-matter jurisdiction over the case.

## Analysis

■■■ A party requesting mandamus relief must meet two requirements. First, it must show that the trial court clearly abused its discretion. *In re Prudential Ins. Co.,* 148 S.W.3d 124, 135 (Tex.2004) (orig. proceeding). Second, it must show that it has no adequate remedy by appeal. *Id.* at 135–36. The relators carry the burden of demonstrating their right to mandamus relief. *See Canadian Helicopters Ltd. v. Wittig,* 876 S.W.2d 304, 305 (Tex. 1994) (orig. proceeding).

We will focus our analysis on the relators' contention that the trial court has abused its discretion by exercising subject-matter jurisdiction over this legal malpractice case. The relators' arguments rely on *USPPS* and *Minton,* as well as other cases involving legal malpractice in the patent-law context,[7] as precedents for applying the *Grable* standard to determine when a state-law cause of action "arises under" federal law because of an embedded federal issue.

As explained below, the relators' argument wrongly assumes the relevance in this circumstance of the "arising under" standard as applied in *Grable* and its progeny. Because there is no nexus between the "arising under" standard and the question of whether federal courts have exclusive jurisdiction over the embedded federal antitrust issues, we reject relators' suggestion that the *Grable* standard provides the appropriate frame of analysis. Instead, applying the standard of *Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981), we conclude that the legal authorities establishing federal jurisdiction to decide federal antitrust claims do not preclude state courts from exercising jurisdiction over state-law malpractice claims with embedded federal antitrust issues.

## I. *Grable* and its specific application relating to patent law

In *Grable,* the United States Supreme Court analyzed whether the claim presented in that case was one "arising under the Constitution, laws, or treaties of the United States" for purposes of federal-question jurisdiction as provided in 28 U.S.C. § 1331. The claim at issue was a suit to

---

**6.** The relators filed a motion in the trial court to stay proceedings pending our resolution of the mandamus petition, and in that context the parties disputed the significance of our request for a response to the relators' petition. Mandamus relief (other than temporary relief) cannot be granted unless the court receives or requests a response. Tex.R.App. P. 52.4. But regardless of whether the court has preliminarily decided that a petition may be meritorious, a response often aids the efficient use of judicial resources by inviting the real party in interest to offer its own legal analysis and perspective of the challenged action. Accordingly, the mere request for a response does not imply any preliminary judgment about the merits of the petition. Rule 52.8 does not suggest otherwise—that rule provides that *"[i]f* the court is of the tentative opinion that relator is entitled to the relief sought or that a serious question concerning the relief requires further consideration ... the court *must* request a response if one has not been filed." Tex.R.App. P. 52.8(b)(1) (emphasis supplied).

**7.** *E.g., Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.,* 504 F.3d 1262 (Fed.Cir.2007); *Immunocept, LLC v. Fulbright & Jaworski, LLP,* 504 F.3d 1281 (Fed.Cir.2007).

quiet title originally filed in state court, and it was subsequently removed to federal court on the grounds that the case presented a question of federal tax law. *Grable*, 545 U.S. at 311, 125 S.Ct. at 2366. If the case could have been originally brought in federal district court, then removal of the case from state court to federal court was proper under 28 U.S.C. § 1441(a). *See id.* at 312, 125 S.Ct. at 2366. Under *Grable*, in order for a state-law claim with an embedded federal question to "aris[e] under the Constitution, laws, or treaties of the United States" such that federal courts have subject-matter jurisdiction over that claim pursuant to section 1331, the state-law claim must (1) raise a stated federal issue that is (2) actually disputed and (3) substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities. *See id.* at 314, 125 S.Ct. at 2368.

Because *Grable* is an application of the "arising under" standard of 28 U.S.C. § 1331, the rule articulated in that case has special application with respect to patent cases, as federal courts have exclusive jurisdiction over all cases "arising under" patent law pursuant to 28 U.S.C. § 1338(a), and the "arising under" language of that statute has been interpreted to apply in the same way that it does for

purposes of section 1331.[8] Thus, the United States Court of Appeals for the Federal Circuit has applied the *Grable* standard to determine whether patent issues embedded within state-law legal malpractice claims arose under federal patent law, so as to permit federal courts to exercise jurisdiction over the claims.[9] The Federal Circuit precedents in this area have concerned whether federal courts could exercise subject-matter jurisdiction over the state-law legal malpractice claims, and they have not been directly concerned with whether the state courts could exercise concurrent jurisdiction over such claims.

The authority of a state court to exercise jurisdiction over a legal malpractice claim involving patent issues was the central issue presented in *Minton v. Gunn*. *Minton* is procedurally distinguishable from the Federal Circuit precedents because it involved Texas state courts deciding whether a legal malpractice claim arose under federal patent law, not to determine whether a federal court could exercise jurisdiction over the claim, but to determine whether the state courts were forbidden from exercising jurisdiction over the claim. In contrast to section 1331, which merely describes an affirmative grant of power for federal courts to exercise jurisdiction over cases "arising under" federal law,[10] section 1338(a) both grants power for federal

---

**8.** *See Christianson*, 486 U.S. at 808–09, 108 S.Ct. at 2173–74; *Air Measurement*, 504 F.3d at 1271.

**9.** In *Air Measurement Technologies, Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, a legal malpractice claim was removed from state court, and the plaintiffs appealed the interlocutory decision to deny a remand back to state court. *See* 504 F.3d 1262, 1265 (Fed. Cir.2007). The federal district court applied the *Grable* test to determine that legal malpractice claim arose under patent law for purposes of 28 U.S.C. § 1338(a). *See id.* at 1267. Because the Federal Circuit agreed that federal jurisdiction could be exercised pursuant to § 1338(a), the district court's re-

fusal to remand the case was affirmed. *See id.* at 1273; *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). Similarly, the Federal Circuit found that 28 U.S.C. § 1338(a) jurisdiction could be exercised over another legal malpractice claim involving federal patent issues in *Immunocept, LLC v. Fulbright & Jaworski, LLP*, 504 F.3d 1281 (Fed.Cir.2007).

**10.** *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

courts to exercise jurisdiction over cases "arising under" patent law [11] and also has a converse effect on the jurisdiction of state courts, which are specifically forbidden from exercising jurisdiction over the same scope of claims.[12] Thus the issue presented in *Minton* was not merely whether the federal courts were authorized to exercise jurisdiction over the claim. That issue had to be considered, but only as a necessary part of the analysis of whether the state courts were prohibited by section 1338(a) from exercising jurisdiction over the claim. The Supreme Court of Texas applied the *Grable* test and held in *Minton* that the particular legal malpractice claim at issue arose under federal patent law. Because federal jurisdiction is exclusive over claims arising under federal patent law, 28 U.S.C. § 1338(a), the state courts could not exercise subject-matter jurisdiction.

The relators in this original proceeding present yet a different scenario. Their argument is similar to the issue presented in *Minton,* insofar as we are asked to decide whether the state courts are forbidden from exercising jurisdiction over a state-law legal malpractice claim because of an embedded federal question. However, the embedded federal issue in this case involves antitrust law instead of patent law. Accordingly, the *Grable* analysis is only relevant to this proceeding if, as in the context of patent law, state courts are forbidden to exercise jurisdiction over any claims "arising under" federal antitrust law.

## II. Presumed concurrent jurisdiction of state courts

■■■ "The general principle of state-court jurisdiction over cases arising under federal laws is straightforward: state courts may assume subject-matter jurisdiction over a federal cause of action absent provision by Congress to the contrary or disabling incompatibility between the federal claim and state-court adjudication." *Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 477–78, 101 S.Ct. 2870, 2875, 69 L.Ed.2d 784 (1981). We begin our analysis with "the presumption that state courts enjoy concurrent jurisdiction." *Id.* at 478, 101 S.Ct. at 2875. Jurisdiction may be exclusively confined to the federal courts by either explicit or implicit Congressional directive. *See id.* Thus, the Supreme Court of the United States has held that "the presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." *Id.; see also Tafflin v. Levitt,* 493 U.S. 455, 459–60, 110 S.Ct. 792, 795, 107 L.Ed.2d 887 (1990).

■■■ Relators have produced no authority that Congress explicitly granted federal courts exclusive jurisdiction of all cases "arising under" the federal antitrust laws. Congress did grant federal district courts "original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." 28 U.S.C. § 1337(a). In addition, the Clayton Act authorizes a private cause of action to be pursued in federal court for injury to "business or property by reason of anything forbidden in the antitrust laws," 15 U.S.C. § 15(a), including the specific right to seek "injunctive relief . . . against threatened loss or dam-

---

11. *See* 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks.").

12. *See id.* ("No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights.").

age by a violation of the antitrust laws," 15 U.S.C. § 26. With specific reference to the Clayton Act's authorization of injunctive relief to be obtained from "any court of the United States having jurisdiction over the parties," the Supreme Court has stated that "[t]his right to sue ... is granted in terms which show that it is to be exercised only in a 'court of the United States.'" *Gen. Inv. Co. v. Lake Shore & M.S. Ry. Co.*, 260 U.S. 261, 287, 43 S.Ct. 106, 117, 67 L.Ed. 244 (1922). Subsequent cases have relied on *General Investment* for the proposition that federal antitrust claims are within the exclusive jurisdiction of the federal courts,[13] despite suggestions [14] that this rule appears to be at odds with the modern understanding that "[i]t is black letter law ... that the mere grant of

jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction over the cause of action." *Gulf Offshore*, 453 U.S. at 479, 101 S.Ct. at 2875–76; *see also Martinez v. California*, 444 U.S. 277, 283 n. 7, 100 S.Ct. 553, 558 n. 7, 62 L.Ed.2d 481 (1980).

▮▮▮ The principle that "federal antitrust claims are within the exclusive jurisdiction of the federal courts" only has been suggested in connection with actual federal antitrust causes of action, and the relators have provided us no example of the rule ever being applied to the broader universe of all claims "arising under" federal antitrust law.[15] Nor have the relators demonstrated any alternative basis for inferring that scope of exclusive federal jurisdiction

**13.** *E.g., Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985); *see also Miller v. Granados*, 529 F.2d 393, 395 (5th Cir.1976) ("[T]he jurisdiction conferred by Congress on federal courts under the Sherman Act is exclusive.").

**14.** *See*, e.g., *Tafflin v. Levitt*, 493 U.S. 455, 470–71, 110 S.Ct. 792, 801, 107 L.Ed.2d 887 (1990) (Scalia, J., concurring) (characterizing the analysis in *General Investment* as "less than compelling"); *Vill. of Bolingbrook v. Citizens Utils. Co.*, 864 F.2d 481, 484–85 (7th Cir.1988) ("One may doubt whether in light of *Mitsubishi* [*Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)] antitrust is still an exclusive province of the federal courts.").

**15.** All of the case law provided to us by the relators involved or otherwise made specific reference to federal antitrust causes of action. *See Tafflin*, 493 U.S. at 462, 110 S.Ct. at 796–97 (in context of holding that state courts have concurrent jurisdiction over civil RICO actions, noting that the Supreme Court has "interpreted § 4 of the Clayton Act to confer exclusive jurisdiction on the federal courts" (citing *Gen. Inv.*, 260 U.S. at 286–88, 43 S.Ct. at 116–17)); *Marrese*, 470 U.S. 373, 379, 105 S.Ct. 1327 (in context of holding that a federal court must consider "the preclusive effect of a state court judgment in a subsequent lawsuit involving federal antitrust claims

within the exclusive jurisdiction of the federal courts," noting that "[a]lthough federal antitrust claims are within the exclusive jurisdiction of the federal courts [citing *General Investment*], the Court of Appeals ruled that the dismissal of petitioners' complaints in state court barred them from bringing a claim based on the same facts under the Sherman Act"); *Hathorn v. Lovorn*, 457 U.S. 255, 266 n. 18, 102 S.Ct. 2421, 2429 n. 18, 72 L.Ed.2d 824 (1982) (in context of holding that state courts are authorized to decide whether the Voting Rights Act applies to a proposed change in voting procedures, noting that "although state courts lack jurisdiction to entertain suits brought pursuant to § 4 of the Clayton Act, 15 U.S.C. § 15, they often decide issues concerning the federal antitrust laws in other contexts"); *Freeman v. Bee Mach. Co.*, 319 U.S. 448, 450, 63 S.Ct. 1146, 1147, 87 L.Ed. 1509 (1943) (after contract claim was removed to federal court, "respondent moved to amend its declaration by adding a complaint for treble damages under § 4 of the Clayton Act"); *Blumenstock Bros. Advertising Agency v. Curtis Pub. Co.*, 252 U.S. 436, 441, 40 S.Ct. 385, 387, 64 L.Ed. 649 (1920) (in context of suit for treble damages under § 7 of the Sherman Act, observing that "the controversy concerns subject-matter limited by federal law, for which recovery can be had only in the federal courts").

based upon an "unmistakable implication from legislative history," or "a clear incompatibility between state-court jurisdiction and federal interests."[16] *Gulf Offshore,* 453 U.S. at 478, 101 S.Ct. at 2875. To the contrary, legal scholarship suggests that "[t]he legislative history of the Sherman Act indicates that exclusive jurisdiction was not intended." Note, *Exclusive Jurisdiction of the Federal Courts in Private Civil Actions,* 70 HARV. L.REV. 509, 510 n. 13 (1957) (citing S. Doc. No. 147, 57th Cong., 2d Sess. 311–13, 317, 320–21, 334 (1903)). And we perceive no clear incompatibility between state-court jurisdiction over the legal malpractice claim at issue and federal interests. The cardinal policy undergirding the Sherman Act is maximizing consumer welfare through the promotion of economic competition.[17] By contrast, the policy undergirding the state-law tort of legal malpractice is to compensate an injured private party for its losses. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.,* 299 S.W.3d 106, 122 (Tex.2009). State-court adjudication of claims alleging injuries resulting from legal malpractice does not threaten to undermine the federal interest

in preventing restraints on free competition.

The claims at issue in this case are state-law malpractice claims, and they are not causes of action created or specifically authorized by federal antitrust laws.[18] An analysis applying *Grable* and *Minton* would inform the question of whether the malpractice claim may "arise under" federal antitrust law pursuant to 28 U.S.C. § 1337(a) and therefore be a candidate for concurrent federal subject-matter jurisdiction. But absent authority that state courts are prohibited from exercising jurisdiction over all claims "arising under" federal antitrust law, the *Grable* analysis does not determine whether the malpractice claim is subject to exclusive federal jurisdiction. The relators thus have made no showing that federal jurisdiction over these claims is exclusive to federal courts to the exclusion of otherwise presumed concurrent state-court jurisdiction.

We conclude that the relators have failed to demonstrate a clear abuse of the trial court's discretion. *See Canadian Helicopters,* 876 S.W.2d at 305; Walker, 827 S.W.2d at 837. To the contrary, we conclude that the trial court is properly exercising jurisdiction over the state-law malpractice claim.[19]

---

16. The relators' petition focuses on the *Grable* test and its consideration of whether the exercise of federal jurisdiction over an overlying state-law claim would disturb "any congressionally approved balance of federal and state judicial responsibilities." *Grable,* 545 U.S. at 314, 125 S.Ct. at 2368; *Minton,* 355 S.W.3d at 640. Accordingly, their arguments are oriented towards justifying the federal interest in adjudicating the claim. The more appropriate question is whether state courts may exercise their presumed concurrent jurisdiction without offending some federal interest.

17. *See, e.g., Am. Needle, Inc. v. Nat'l Football League,* —— U.S. ——, 130 S.Ct. 2201, 2212, 176 L.Ed.2d 947 (2010); *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.,* 551 U.S. 877, 886, 127 S.Ct. 2705, 2713, 168 L.Ed.2d 623 (2007); *see generally* ROBERT H. BORK, THE ANTITRUST PARADOX 50–71 (1993 ed.).

18. *Cf. Wilshire Oil Co. v. Riffe,* 409 F.2d 1277, 1284 (10th Cir.1969) (distinguishing federal antitrust claim from employer's common-law right to recover antitrust fine from employees whose conduct occasioned the fine).

19. We also note that a conclusion that federal courts have exclusive subject-matter jurisdiction over this malpractice claim would be diametrically opposed to the prior ruling in this same dispute that "federal question jurisdiction does not exist in this case, and removal was not proper on this basis." *RX.com, Inc. v. O'Quinn,* 766 F.Supp.2d 790, 793, 797 (S.D.Tex.2011). If we granted the relief sought by the relators, the real parties in interest would face the circumstance of having to re-file their claims in federal district court after one federal district judge has already ruled that there is no federal subject-matter jurisdiction over the claim. A federal

## Conclusion

We conclude that Texas courts are not prohibited from exercising jurisdiction over the state-law legal malpractice claims in this case. Because we conclude that no clear abuse of discretion has been shown, we express no opinion about what circumstances would permit a private litigant to obtain review of the denial of a plea to the jurisdiction by means of a petition for writ of mandamus due to the alleged inadequacy of the remedy of appeal from a final judgment.

Accordingly, we deny the petition for writ of mandamus.

Justice BROWN, concurring.

HARVEY BROWN, concurring.

I join in the Court's opinion holding that federal courts do not have exclusive jurisdiction over this case. The Court holds, and I agree, that regardless of whether federal courts have jurisdiction over cases like this one, relators have not established that such jurisdiction would be exclusive of, rather than concurrent with, state courts' jurisdiction. I write separately only to address another approach to the issue. Specifically, like the federal district court that considered this issue before us,[1] I would hold that, under the existing record, relators have not established two prerequisites to the existence of federal jurisdiction over this case: (1) the existence of a "substantial" federal question and (2) harmony with the careful balance between federal and state courts. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005) (setting forth four-part

test for embedded-federal-question jurisdiction). Because federal courts do not have jurisdiction over this case, they necessarily do not have exclusive jurisdiction.

## Embedded–Federal–Question Jurisdiction

The jurisdictional provisions of the United States Code grant federal district courts original jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States." This is often referred to as "federal question jurisdiction" or "arising under jurisdiction." 28 U.S.C. § 1331. An action "aris[es] under" federal law when (1) federal law creates the cause of action or (2) in some rare cases, when a cause of action created by state law nevertheless turns on a substantial question of federal law. *See Grable,* 545 U.S. at 312, 125 S.Ct. at 2366–67 (noting that federal-question jurisdiction over state-law claim is less common); *see also Empire Healthchoice Assur., Inc. v. McVeigh,* 547 U.S. 677, 699, 701, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006) (describing category of cases as "special and small" and "slim"); Lonny S. Hoffman, *Intersections of State and Federal Power: State Judges, Federal Law, and the "Reliance Principle",* 81 Tul. L.Rev. 283, 298 (2006) ("routine efforts to come within this statutory head of jurisdiction should be rejected in favor of allowing the state court to apply and interpret the applicable federal law"). The second type of federal-question jurisdiction is often referred to as embedded-federal-question jurisdiction.

The questions in this legal malpractice suit—arising out of relators' prosecution of

---

court—perhaps even the same federal district judge—might then be forced to either exercise jurisdiction or effectively leave the real parties judicially homeless, shunned by both state and federal courts refusing to exercise jurisdiction to resolve their claims on the merits. Such "jurisdictional ping-pong" is undesir-

able due to its tendency to "undermine public confidence in our judiciary" and "squander private and public resources." *Christianson,* 486 U.S. at 818–19, 108 S.Ct. at 2179.

1. *RX.com, Inc. v. O'Quinn,* 766 F.Supp.2d 790, 795–97 (S.D.Tex.2011).

a Sherman Act claim in federal court—are whether federal question jurisdiction exists over this state-law action and, if so, whether that jurisdiction is exclusive. Under this record, I answer the first question in the negative, and therefore do not need to reach the second question (although I join in the Court's answer to that question). Answering the first question requires a four-part inquiry: (1) do real-party plaintiffs' legal malpractice claims require resolution of an issue of antitrust law under the Sherman Act; if so, is that antitrust issue (2) actually disputed and (3) substantial; and (4) will federal jurisdiction disturb the balance of federal and state judicial responsibilities. See Grable, 545 U.S. at 312–14, 125 S.Ct. at 2366–68; see also Minton v. Gunn, 355 S.W.3d 634, 640 (Tex. 2011), petition for cert. filed, No. 11–1118 (U.S. March 9, 2012). Requiring an affirmative answer to each of these four inquiries is necessary to ensure that reference to an embedded federal issue is not "a password for opening federal courts" to any state malpractice action "embracing a point of federal law." Grable, 545 U.S. at 314, 125 S.Ct. 2363.

Relators' plea to the jurisdiction fails to satisfy two of these elements. First, the record before us does not establish the existence of a "substantial" federal question. Second, relators have not demonstrated that affording federal courts jurisdiction over malpractice actions like this one would not upset the careful balance between federal and state courts.

## A. The record does not show a substantial, disputed federal issue

Relators' petition in this Court is premised primarily on their broad interpretation of Minton and its application of the standards articulated in Grable. Relators contend that, under Minton, they have shown the presence of an "actually disputed" and "substantial" federal issue (the second and third factors under Grable)

merely by asserting that they are contesting whether the real-party plaintiffs could have prevailed on their underlying Sherman Act claim. They characterize this fact as being "absolutely dispositive." But that conclusion is not compelled by Minton for several reasons. First, while Minton involved a meaningful legal and factual dispute over intersecting patent law doctrines, relators have not demonstrated that the federal issues here require anything more than the application of established federal law to factually-disputed claims. Second, the Minton court expressly limited its holding to the facts of that case, and the circumstances favoring federal jurisdiction in Minton are not present here.

### 1. Minton turned on a substantial, legally and factually disputed issue of federal patent law

In Minton, the Texas Supreme Court held that federal courts had exclusive jurisdiction over a legal malpractice lawsuit arising out of the defendants' handling of a patent claim. Minton, 355 S.W.3d at 640–47. Relators construe Minton as a seachange in the doctrine of embedded-federal-question jurisdiction, essentially eliminating Grable's "actually disputed" and "substantial" federal issue requirements when the federal issue arises from an area of federal law in which Congress has created claims that may originate only in federal courts. But the Minton Court did not presume a "substantial" federal question merely because the malpractice action before the Court would require the application of federal patent law; instead, the Court determined that the federal issue in that case was, in fact, substantial and actually disputed.

The federal issue in Minton was whether the "experimental use" exception would have excused Minton's patent claim from the statutory on-sale bar against patents filed more than one year after the patent-

ed invention is sold. *Id.* at 638. The application of patent law's "experimental use" doctrine was dispositive of Minton's malpractice action: Minton's sole assertion of negligence was premised on his attorneys' failure to timely plead and brief the experimental use exception in the federal patent litigation. *Id.* at 642. The Court recognized the "strong interest in having federal patent law applied uniformly." *Id.* at 645; *see also* 28 U.S.C. § 1295(a) (vesting federal circuit with exclusive jurisdiction over patent appeals). Despite all of this—a state-law claim that depended entirely on the interaction between a federal statute and a federal-common-law exception to that statute in an area of law in which the courts have recognized a strong interest in uniform federal interpretation and application—the Minton Court expressly noted that whether the federal issue was sufficiently substantial to justify exclusive federal jurisdiction was a "close" call. *Id.* at 643. If *Minton* was a close call, this is an easy one.

**2. Relators have not shown a substantial federal issue that is both legally and factually disputed**

*Minton* instructs that in order for a disputed federal issue to be substantial there must be more than factual disputes regarding the application of the federal laws to the case—there must also be a

legal dispute.[2] *Id.* at 644 (stating that plaintiff was required to prove that federal issue was "legally and factually viable"); *see also id.* at 642–43 ("the legal and factual viability" of federal issue was "clearly in dispute"). It is the construction of the law—not its application, which is often left to the jury—in which the expertise of federal judges is particularly helpful and uniformity is needed. A dispute over the application of the law to the facts of the case is insufficient to open the doors to the federal courthouse. *See Grable*, 545 U.S. at 315, 125 S.Ct. 2363 ("meaning of the federal [law]" must be actually in dispute); *id.* at 316, 125 S.Ct. 2363 (observing that the Court in *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), "assumed that federal law would have to be applied to resolve the claim" but nevertheless determined that federal jurisdiction was unavailable). The Grable Court rejected the "expansive view that mere need to apply federal law in a state-law claim will suffice to open the 'arising under' door." *Grable*, 545 U.S. at 313, 125 S.Ct. 2363. Instead, it twice stated that the issue is whether there is a dispute "respecting the validity, construction or effect of [federal] law." *Id.* (quoting *Shulthis v. McDougal*, 225 U.S. 561, 569, 32 S.Ct. 704, 56 L.Ed. 1205 (1912)).

**2.** In *Minton*, there was a factual dispute regarding the applicability of the experimental use exception to the on-sale bar to patentability of the invention. The court of appeals' opinion reveals that there was also, however, a legal dispute. *Minton v. Gunn*, 301 S.W.3d 702, 709 (Tex.App.-Fort Worth 2010), *rev'd on other grounds*, 355 S.W.3d 634 (Tex.2011) (noting that dispute was "predominately one of fact"). In the court of appeals, the parties disagreed on the standard that applies for determining when testing is sufficient to constitute an experimental use. The plaintiff contended that "experimental use is supported by any testing needed to convince the inventor that the invention is capable of per-

forming its intended purpose in its intended environment." *Id.* at 712 n. 46. The court of appeals disagreed and held that the testing must relate to a claimed feature of the patented invention. Applying this standard, the court of appeals concluded that the testing evidence offered by the inventor did "not, as a matter of law, support experimental use." *Id.* at 712. Because the court of appeals affirmed a no-evidence summary judgment on this basis, the disputed legal issue was critical to the ultimate issue in the case. In contrast, in this case, there is no evidence of a significant, disputed legal issue in the plea to the jurisdiction.

Relators rely on certain defenses asserted by the antitrust defendants in the underlying Sherman Act lawsuit as establishing a substantial federal issue.[3] Even if we were to look at its defenses in the original lawsuit,[4] relators have not demonstrated on this record that those defenses implicate a legal dispute involving the validity or construction of federal antitrust law, as opposed to the mere application of such law to the facts of this case. The mere fact that the "case within the case" is based on Sherman Act claims supports a fair inference that federal issues may arise in the course of the litigation. These may include the issues identified in relators' plea to the jurisdiction and may include disputes that are primarily legal in nature or disputes that are more fact-oriented. But at this point we can only speculate; the record does not establish that these defenses would require anything other than a "fact-bound and situation-specific" analysis under generic principles of antitrust litigation. *See Empire Healthchoice,* 547 U.S. at 701, 126 S.Ct. at 2137 (stating that "fact-bound and situation-specific" federal questions are insufficient to create arising-under jurisdiction); *Bennett v. Sw. Airlines Co.,* 484 F.3d 907, 910 (7th Cir. 2007) ("What the Court said about *Grable* in *Empire Healthchoice* can be said here too. We have a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law.").

### 3. *Minton* is an expressly limited holding

Although this case, like *Minton,* is a malpractice action arising out of the prosecution of a federal cause of action, that fact does not, alone, establish a substantial federal issue. The Supreme Court rejected that kind of sweeping displacement of state-law claims in *Grable.* *See Grable,* 545 U.S. at 314, 125 S.Ct. at 2368 (rejecting "single, precise, all-embracing" test for determining embedded federal jurisdiction) (quoting *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 821, 108 S.Ct. 2166, 2180, 100 L.Ed.2d 811 (1988) (Stevens, J., concurring)); *id.* at 317–18, 125 S.Ct. at 2370 (describing *Merrell Dow* as disclaiming "any bright-line rule" and explaining that "questions of jurisdiction over state-law claims require 'careful judgments'" and a "contextual enquiry"); *Merrell Dow,* 478 U.S. at 808, 106 S.Ct. at 3232 (rejecting use of a "single, precise defini-

---

**3.** To the extent relators rely on expert reports they provided this Court after oral argument, we may not consider evidence not before the trial court at the time of the plea to the jurisdiction hearing. *See In re Taylor,* 113 S.W.3d 385, 392 (Tex.App.-Houston [1st Dist.] 2003, orig. proceeding) (stating that, in mandamus proceedings, we "focus on the record that was before the trial court" and exclude from our consideration filings "that were not part of the trial court record at the time of the hearing on the motion that is the subject of the original proceeding."). Even if I were to consider these reports, it is still not clear to me that there is a substantial federal question; relators' motion for summary judgment (which real-party plaintiffs filed after oral argument and was also filed after the ruling on the plea to the jurisdiction) is not based on any arguments under the Sherman Act.

**4.** Real-party plaintiffs contend that we cannot consider this evidence under the well-pleaded complaint rule, a federal standard that limits subject-matter-jurisdiction inquiries to the face of the plaintiffs complaint. *See Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 10, 103 S.Ct. 2841, 2847, 77 L.Ed.2d 420 (1983) ("the *plaintiff's* complaint establishes that the case 'arises under' federal law"). Arguably, the inquiry here could be governed by the Texas procedure that permits challenges to the existence of jurisdictional facts in a plea to the jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226–27 (Tex. 2004). Because the documents on which relators rely do not demonstrate a substantial, disputed federal issue, I need not decide this issue.

tion" to determine arising-under jurisdiction). Consistently, the Minton Court expressly limited the scope of its holding, stating that it would not "cause all legal malpractice suits arising out of patent litigation to fall under the exclusive patent law jurisdiction of the federal courts," and cautioning that the opinion "should only be construed as conferring exclusive federal patent jurisdiction based upon the specific facts of this case." *Minton*, 355 S.W.3d at 646. Furthermore, the Court noted that "any state litigant asserting a legal malpractice action to recover for damages resulting from his patent attorney's negligence in patent prosecution or litigation must also satisfy all four elements of the *Grable* test to place his claim under exclusive federal jurisdiction," and that "[i]n the context of state-based legal malpractice claims, plaintiffs will not always be able to meet such a burden." *Id.*

In addition to the absence from the record of a substantial *legal* dispute over federal law, several other key facts favorable to federal jurisdiction in *Minton* are not present here. First, antitrust law does not present the same heightened need for uniformity and predictability presented by questions of patent validity. *See, e.g., USPPS, Ltd. v. Avery Dennison Corp.,* 647 F.3d 274, 284 (5th Cir.2011) (observing that special federal interest exists in developing uniform body of patent law, and that interest is protected by "Congress's grant of exclusive appellate jurisdiction over patent cases to [federal circuit] court."); *see also USPPS, Ltd. v. Avery Dennison Corp.,* 676 F.3d 1341, 1350 (Fed.Cir.2012) (Prost, J., concurring) (contending that Federal Circuit's approach to legal malpractice cases comports with *Grable* because "substantive patent law issues" implicated in such cases are necessarily substantial).

Second, patent law's "experimental use" exception to the on-sale bar was the ful-

crum of the *Minton* action—the failure to properly plead and brief the "experimental use" doctrine was the sole act of negligence Minton pleaded, and Minton alleged that failure, alone, caused him to lose his patent claim—and that issue was brought to a head in the trial court through summary judgment proceedings. *Minton*, 355 S.W.3d at 642. Here, the negligent conduct pleaded is failure to file the underlying litigation timely; the Sherman Act defenses relators identify (which were pleaded by the defendants in the underlying action) are, under this record, only some of the issues that may be relevant to proving the causation element of real-party plaintiffs' malpractice claim. *Cf. id.* at 646–47 (favorably citing *Roof Tech. Servs., Inc. v. Hill,* 679 F.Supp.2d 749, 754 (N.D.Tex.2010) (explaining that state legal malpractice action involving attorney's "failure to meet deadlines and communicate with [his] client" and in which "[p]atent issues are merely floating on the periphery" did not trigger exclusive federal patent jurisdiction), and *Genelink Biosciences, Inc. v. Colby,* 722 F.Supp.2d 592, 601 (D.N.J.2010) (holding that where state malpractice claim was based on missed deadlines, and not on the validity of the actual patent itself, there was no patent issue triggering exclusive federal patent law jurisdiction)).

**4. Conclusion on the "substantial federal issue" element**

A substantial contested federal issue is one that involves "a serious federal interest in claiming the advantages thought to be inherent in a federal forum" and "an important issue of federal law" that is "both dispositive of the case and ... controlling in numerous other cases." *Grable,* 545 U.S. at 313, 315, 125 S.Ct. at 2367–68; *Empire Healthchoice,* 547 U.S. at 700, 126 S.Ct. at 2137. It is also central to the parties' dispute. *See Grable,* 545 U.S. at

312, 320, 125 S.Ct. at 2367, 2371 (disputed federal issue was "at the heart of the state-law title claim"); *Empire Healthchoice*, 547 U.S. at 699 n. 5, 126 S.Ct. at 2136 (describing the classic federal-question jurisdiction claim as one "predicated on the centrality of a federal issue"); *see also Minton*, 355 S.W.3d at 645; Hoffman, 81 Tul. L.Rev. at 300 (stating that disputed federal issue "may not be some minor point of federal law, but instead vital, relevant, and significant ... to a wide range of persons and behavior" and "an issue is of widespread import").[5] Thus, relators' burden to show a substantial issue is not a light one. They must demonstrate both the issue's importance in the suit itself and in the greater scheme of the development of the law. Relators have failed to carry this burden to show a clear abuse of the trial court's discretion warranting mandamus relief.

**B. Relators have not shown that recognizing federal jurisdiction here would not disrupt the careful balance between federal and state courts**

Relators likewise fail to satisfy the fourth, and arguably most important, prong of the *Grable* test. *See Grable*, 545 U.S. at 310, 125 S.Ct. at 2365 (stating that "the national interest in providing a federal forum" for the federal issue involved in case was "sufficiently substantial to support the exercise of federal-question jurisdiction" without distorting the "division of labor between state and federal courts"); *see also Minton*, 355 S.W.3d at 644. Specifically, relators ask this Court to hold that an action traditionally pursued in state court now belongs (exclusively) in federal court, despite a federal district court's determination that it lacked any (much less exclusive) jurisdiction over the case. But they have not demonstrated that such a holding would not disturb the balance of judicial responsibility Congress has struck between federal and state courts under the procedural posture of this case.

Federal courts have limited jurisdiction. And federal courts have expressed concern that the doors to their courts should not be opened too wide for claims that are traditionally handled by state courts—like legal malpractice claims—under the doctrine of embedded-federal-question jurisdiction. *See Grable*, 545 U.S. at 319, 125 S.Ct. at 2371 (finding jurisdiction only after determining that recognizing federal-question jurisdiction over actions like that before Court "would not materially affect, or threaten to affect, the normal currents of litigation" by introducing flood of state claims into federal courts). Here a federal court has already rejected relators' contention that federal courts have jurisdiction over this case. Congress elected to make a federal court's determination that a case should be remanded generally non-reviewable. 28 U.S.C. § 1447(d); *Schexnayder*

---

5. This requirement, known as the centrality requirement,

> addresses whether the plaintiff's claim is "federal enough" to justify invocation of federal question jurisdiction. Centrality asks how much—an assessment ill-suited to a cut-and-dried rule. It calls for a standard that ... tends to collapse decisionmaking back into the direct application of the background principle or policy to a fact situation. Standards allow for the decrease of errors of under- and over-inclusiveness by giving the decisionmaker more discretion than do rules. Standards allow the decisionmaker to take into account all relevant factors or the totality of the circumstances. We should not be surprised or disappointed, then, if the centrality inquiry does not always yield litmus-like answers. The nature of the inquiry requires nuance and balancing.

Richard D. Freer, *Of Rules and Standards: Reconciling Statutory Limitations on "Arising Under" Jurisdiction*, 82 Ind. L.J. 309, 320 (2007).

*v. Entergy La., Inc.,* 394 F.3d 280, 283 (5th Cir.2004). To allow a state court to second-guess a federal court that has already remanded a case because it determined that it lacked jurisdiction would be contrary to Congress's ·intent in limiting review of remand determinations. If a federal court decides to close its doors to a claim, a state court should not force the federal courthouse door open.

"[T]here must always be an assessment of any disruptive portent in exercising federal jurisdiction." *Grable,* 545 U.S. at 314, 125 S.Ct. at 2368. Here that assessment counsels against a state-court declaration that, contrary to the prior decision of a federal court upon removal, federal courts—and federal courts alone—bear the burden of providing a remedy for a state-law cause of action merely because federal law may be applied to an element of the claim.

### Conclusion

Courts should attempt to avoid "upsetting the state-federal line drawn (or at least assumed) by Congress." *Grable,* 545 U.S. at 314, 125 S.Ct. at 2368. Legal malpractice claims are on the side of the line that is "ordinarily resolved in state courts." *Empire Healthchoice,* 547 U.S. at 683, 126 S.Ct. at 2127. Therefore, in deciding whether 28 U.S.C. § 1331 grants federal courts arising-under jurisdiction, courts "should await a clear signal from Congress" that it intends to displace state courts of this task. *Id.* Because no such signal exists here, I would conclude that the trial court did not abuse its discretion in denying the plea to the jurisdiction on the record before it.

I therefore concur in the Court's opinion.